UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HERBERT E. ROBERTSON,<br><br>    Plaintiff,<br><br>    v.<br><br>JEN BURROUGHS and TIFFANY TURNER,<br><br>    Defendants. | CAUSE NO. 3:23-CV-212-RLM-MGG |

## AMENDED OPINION AND ORDER

Herbert E. Robertson, a prisoner without a lawyer, filed a complaint. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Robertson alleges that on December 1, 2022, he was transported from Indiana State Prison to I.U. Methodist Hospital for a surgical procedure on his L4-L5 spinal segment to treat severe foraminal encroachment, chronic radiculopathy, and severe pain. The doctor who performed the procedure discharged him same day with instructions to monitor him for 24 hours for infection at the procedure site and for complications from the procedure. If any complications were observed, the doctor said

Mr. Robertson was to be taken immediately to the nearest emergency room. Despite the doctor's instructions that he be monitored for the first 24 hours, Mr. Robertson alleges Nurse Jen Burroughs refused to keep him in the infirmary or place him in the secure cell in the nurses' station. Instead, she instructed a custody officer to place him in a segregation cell in D-Cellhouse, which Mr. Robertson asserts is the most isolated place in the prison.

Mr. Robertson alleges that his medical condition worsened the night after the procedure. He says he had a loss of bladder control, shortness of breath, a severe headache, and dizziness, but he couldn't contact medical staff. The next day, Nurse Tegan Nelson, escorted by Correctional Sergeant Robinson, visited him to check for infection at the procedure site and to assess him for any post-procedure complications. When Sergeant Robinson removed him from the cell, Mr. Robertson alleges he was dizzy, unsteady on his feet, short of breath, and had to lean on the sergeant to walk. Mr. Robertson informed Nurse Nelson that he had a severe headache, that he had lost control of his bladder, and that he couldn't catch his breath, and she personally observed that he was flush and unsteady on his feet. Nurse Nelson remarked that those symptoms were the among those the discharge instructions warned of. She left, saying she was going to notify the medical provider and that Mr. Robertson would be brought to medical immediately.

Mr. Robertson alleges that Nurse Nelson didn't have him brought to medical, notify the doctor on duty, or make an entry in his chart about what she observed. He alleges that he later learned Nurse Nelson didn't report his need for emergency care

to a provider. Instead, she told Nurse Tiffany Turner about his need for emergency care, and she in turn later explained that she was too busy that day to have him brought to medical.

After Nurse Nelson didn't return that day, Mr. Robertson called out from his cell for Sergeant Robinson to help him, but she never returned to his cell. He complains that Sergeant Robinson didn't check on him for the rest of the day.

A correctional lieutenant took Mr. Robertson to medical in a wheelchair the next day. Nurse Turner immediately sent him to an outside hospital for emergency care. At the hospital, he received IV fluids for severe dehydration from the loss of bladder control, morphine for severe pain, and oxygen for shortness of breath. Additionally, he had a catheter placed in his bladder. He remained in the hospital until the next day. Mr. Robertson alleges the delay in receiving emergency care exacerbated his condition and left him in pain for more than 24 hours.

Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless

3

manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005). "Deliberate indifference can include the intentional delay in access to medical care. A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (internal citation omitted).

To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). A mere disagreement with medical professionals about the appropriate course of treatment doesn't establish deliberate indifference, nor does negligence or even medical malpractice. Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011); *McNeil*, 16 F.3d 123 at 124; Estelle v. Gamble, 429 U.S. 97, 106 (1976). Even incompetence doesn't state a claim for deliberate indifference. Minix v. Canarecci, 597 F.3d 824, 831-32 (7th Cir. 2010).

Giving Mr. Robertson the inferences to which he is entitled at this stage of the proceedings, he states a claim against Nurse Burroughs based on her decision to house him in a place where medical care wasn't easily accessible, even though he was

4

at risk for post-procedure complications. He may also proceed against Nurse Turner for the delay in seeking emergency medical care for the post-procedure complications. Nurse Nelson can't be held responsible for the delay, though, because the complaint establishes that she reported the issue to Nurse Turner, who had the ability to send him to the hospital.

Mr. Robertson doesn't state a claim against Sergeant Robinson. As a nonmedical officer, she may typically rely on medical staff's judgment regarding whether medical care is being appropriately provided. *See* Miranda v. Cnty. of Lake, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, nonmedical jail staff may generally trust the professionals to provide appropriate medical attention."). "However, nonmedical officials can be chargeable with deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Arnett v. Webster, 658 F.3d at 755 (quotation marks and ellipses omitted). Mr. Robertson's allegations show that Sergeant Robinson was aware of Mr. Robertson's condition, but also that medical staff promised to provide treatment. Mr. Robertson explicitly alleges that Sergeant Robinson didn't follow up on whether Nurse Nelson did as she said she would. Sergeant Robinson can't be held responsible for Nurse Nelson's failure to do so. *See* Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) ("Public employees are responsible for their own misdeeds but not for anyone else's."). Without actual knowledge that Mr. Robertson wasn't being treated, she can't be deliberately indifferent to any unmet medical needs.

For these reasons, the court:

(1) GRANTS Herbert E. Robertson leave to proceed against Nurse Jen Burroughs in her individual capacity for compensatory and punitive damages for placing him at risk of serious harm by housing him in a segregation cell in D-Cellhouse, where he could not be easily monitored for complications following his surgical procedure on December 1, 2022, in violation of the Eighth Amendment;

(2) GRANTS Herbert E. Robertson leave to proceed against Nurse Tiffany Turner in her individual capacity for compensatory and punitive damages for the delay in seeking emergency medical care for post-procedure complications on December 2, 2023, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Tegan Nelson and Robinson;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Jen Burroughs and Tiffany Turner at Centurion Health of Indiana, LLC, with a copy of this order, the order vacating the prior screening order (ECF 10), and the complaint (ECF 2);

(6) ORDERS Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Jen Burroughs and Tiffany Turner to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R.

10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

    SO ORDERED on June 20, 2023

                                                        s/ Robert L. Miller, Jr.
                                                        JUDGE
                                                        UNITED STATES DISTRICT COURT