UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HERBERT E. ROBERTSON, <br><br> Plaintiff, <br><br> v. <br><br> JEN BURRELL and TIFFANY TURNER, <br><br> Defendants. | CAUSE NO. 3:23-CV-212-CCB |

## OPINION AND ORDER

Herbert E. Robertson, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Nurse Jen Burrell "in her individual capacity for compensatory and punitive damages for placing him at risk of serious harm by housing him in a segregation cell in D-Cellhouse, where he could not be easily monitored for complications following his surgical procedure on December 1, 2022, in violation of the Eighth Amendment[.]" ECF 11 at 6. Second, he is proceeding against Nurse Tiffany Turner "in her individual capacity for compensatory and punitive damages for the delay in seeking emergency medical care for post-procedure complications on December 2, [2022]¹, in violation of the Eighth Amendment[.]" *Id.* The defendants filed a motion for summary judgment. ECF 112. Robertson filed a response, and the defendants filed a reply. ECF 118, ECF 119. Robertson then filed a motion for

---

¹ The screening order contained a typographical error, identifying the date of the incident as December 2, 2023, not in 2022. ECF 11 at 6. The correct year is clear from context, and no party was confused by the error.

leave to file a sur-reply, and the defendants filed a response. ECF 120, ECF 121.[2] The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'"

---

[2] The court has reviewed the contents of Robertson's sur-reply, and concludes it has no impact on the disposition of this case. Therefore, Robertson's motion for leave to file his sur-reply is granted, and the defendants need not be permitted to file a response to his sur-reply.

*Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Deliberate indifference can include the intentional delay in access to medical care. A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (internal citation omitted)

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no

3

    minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

    Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

    The parties provide Robertson's medical records and their own affidavits, which show the following facts: On December 1, 2022, Robertson was transported to an offsite medical provider to receive a steroid injection to his back. ECF 113-1 at 16-19; ECF 118 at 2-3; ECF 118-2 at 5. Robertson returned to the prison later that day and was evaluated by Nurse Jen Burrell. ECF 113-1 at 16-17. Nurse Burrell was provided with Robertson's written discharge instructions from the outside provider, which informed Robertson he should avoid strenuous activity, drink plenty of fluids, and go immediately to the emergency room if he exhibited various symptoms including chest pain, shortness of breath, loss of bladder control, prolonged dizziness, and severe headaches. ECF 118-2 at

22-23. Robertson also orally reported to Nurse Burrell that the offsite medical provider wanted the injection site to be cleansed and dressed daily until the site healed. ECF 113-1 at 16-17; ECF 113-3 at 1. Nurse Burrell added this direction to the "Treatment Book"[3] at the nurse's station, recorded it in Robertson's medical records, and added Robertson to the nurse's call list[4] for the next day so the injection site would be cleansed and dressed during the nursing staff rounds. ECF 113-1 at 16-17; ECF 113-3 at 1-2. Nurse Burrell then returned Robertson to his housing unit. ECF 113-1 at 17.

On December 2, 2022, Robertson was seen and assessed by Nurse Teagan Nelson and exhibited symptoms of shortness of breath, severe headaches, loss of bladder control, and dizziness. ECF 118-2 at 15.[5] Nurse Nelson determined Robertson needed emergency care, but he was not provided any emergency care at that time. *Id.*

On December 3, 2022, Robertson was seen by Nurse Tiffany Turner and reported several episodes of dizziness and loss of bladder control following his steroid injection.

---

[3] The defendants state in their Statement of Material Facts that Nurse Burrell recorded the discharge instructions "in the treatment book at the ISP nurses station" on December 1, 2022. ECF 114 at 2. But during discovery, when Robertson requested the defendants to produce a copy of the instructions recorded in the "Treatment Book" on December 1, the defendants responded there was no evidence that Nurse Burrell recorded any instructions in the "Treatment Book" on December 1. ECF 86 at 1-2. Because the defendants now concede in their Statement of Material Facts that Nurse Burrell did record instructions in the "Treatment Book" on December 1, the court orders the defendants to provide a copy of those instructions to Robertson as supplemental discovery.

[4] Just as with the "Treatment Book," Robertson requested the defendants to produce a copy of any "nurses call list" for the date of December 2, 2022, and what the "nurses call list" stated regarding him, and the defendants produced only the medical record Nurse Burrell made on December 1, noting that he would be "added to 12/2/22 call list nurses station for follow up assessment and cleansing of post injection site." ECF 86 at 2-3, 6-7. Because the defendants refer to Robertson being added to the "nurses call list" in their Statement of Material Facts, the court orders the defendants to provide a copy of the "nurses call list" for December 2, 2022, or provide the name of the custodian of that record and explain why such record is not within their custody or control.

[5] Neither party provides a written record of Robertson's December 2 evaluation by Nurse Nelson. But Robertson attests he was seen by Nurse Nelson on this date, and the defendants don't dispute that attestation.

5

ECF 113-1 at 12-14. Nurse Turner consulted with Nurse Karen Fagen who ordered him to be transported to the hospital. *Id.* at 14. While in the hospital, Robertson was found to have a urinary retention and received a foley catheter. *Id.* at 6-7.

On December 5, 2022, Robertson returned to the prison from the hospital with a catheter in place and was seen by a Doctor of Nursing Practice. ECF 113-1 at 6-11. The Doctor of Nursing Practice decided to leave Robertson's catheter in place while awaiting further results from testing during his emergency room visit and a urology follow up. *Id.* at 11. On December 6, 2022, Robertson was seen by Nurse Burrell at the nurse's station for complaints of incontinence, headache, and dizziness. *Id.* at 2-3. Nurse Burrell noted Robertson's injection site did not show signs of increased redness or swelling and passed the recommendations of the Doctor of Nursing Practice along to the other nurses working at the prison. *Id.* at 3. Because neither party disputes these facts, the court accepts them as undisputed.

<u>Nurse Burrell</u>

Robertson is proceeding against Nurse Burrell "for placing him at risk of serious harm by housing him in a segregation cell in D-Cellhouse, where he could not be easily monitored for complications following his surgical procedure on December 1, 2022[.]" ECF 11 at 6. Specifically, Robertson alleged in his complaint that Nurse Burrell received written discharge instructions from the offsite physician to monitor him for infection and emergency symptoms for 24 hours following his procedure, but ignored these instructions and sent him to his housing unit rather than the infirmary. ECF 2 at 5-6.

6

Nurse Burrell argues she was not deliberately indifferent for returning Robertson to his housing unit on December 1 because she had no reason to believe he required additional monitoring at that time, as she never received any instructions from Robertson's offsite medical provider to monitor him following the steroid injection. ECF 115 at 8-9. She attests that when she examined Robertson on December 1, neither Robertson nor the escorting correctional officer informed her that Robertson would require close observation by medical personnel following the injection. ECF 113-3 at 1-2.

In response, Robertson argues Nurse Burrell should have known he required monitoring because she received and reviewed the written discharge instructions he'd been provided by the offsite medical provider. ECF 118 at 3-4; ECF 118-2 at 14. However, the written discharge instructions do not indicate that Robertson needed to be continuously monitored by medical personnel upon his return to the prison. *See* ECF 118-2 at 22-23. Rather, the written discharge instructions do not mention any specific need to monitor Robertson, and there's nothing in the discharge instructions that indicate it would be inappropriate to return Robertson to his housing unit. *See id.* Robertson also argues that both he and the escorting correctional officer told Nurse Burrell that he needed to be monitored following his return to the prison. ECF 118 at 3-5, 9-10. But there's no evidence that either Robertson or the escorting correctional officer have any medical training, so Nurse Burrell was not required to defer to their opinions. *See Ciarpaglini*, 352 F.3d at 331 (the plaintiff's mere disagreement with medical professionals about the appropriate treatment does not show an Eighth Amendment violation); *Berry v. Peterman*, 604 F.3d 435, 441 ("mere disagreement with a doctor's

7

medical judgment" is insufficient to show deliberate indifference). Because the written discharge instructions did not state Robertson needed to be monitored by medical personal, no reasonable jury could conclude it was "plainly inappropriate" for Nurse Burrell to return Robertson to his housing assignment based on the written discharge instructions. *See Hayes*, 546 F.3d at 524.

Robertson also argues for the first time that Nurse Burrell was deliberately indifferent for failing to provide him medical care for his post-injection symptoms when he returned to the prison because both he and the escorting correctional officer reported to Nurse Burrell that he'd become dizzy and lost control of his bladder during his transportation back to the prison. ECF 118 at 3-5, 7. However, Robertson never raised these allegations in his complaint, and they are different from the claim on which he is proceeding in this case. Specifically, Robertson is proceeding against Nurse Burrell on a claim asking whether she was deliberately indifferent for returning him to his cell in defiance of the offsite physician's written discharge instructions to keep him for monitoring for 24 hours. *See* ECF 2 at 5-6 (complaining Nurse Burrell received written discharge instructions to monitor him for infection and emergency symptoms for 24 hours following his procedure but ignored these instructions by returning him to his housing unit); ECF 11 at 1-2 (granting Robertson leave to proceed against Nurse Burrell based on his allegation that Nurse Burrell disregarded the offsite physician's "instructions to monitor him for 24 hours" following the procedure). This is different from the question Robertson now raises regarding whether Nurse Burrell ignored a serious medical need by failing to provide emergency care for his post-procedure

symptoms. Thus, Robertson's allegations that Nurse Burrell failed to provide medical care for his symptoms of dizziness and loss of bladder control fall outside the scope of this lawsuit.

Accordingly, because it's undisputed the offsite physician's written discharge instructions did not indicate Robertson needed to be monitored by medical staff after his procedure, there's no evidence by which a reasonable jury could conclude Nurse Burrell's conduct of returning Robertson to his housing unit was "plainly inappropriate." *See Hayes*, 546 F.3d at 524. Rather, the evidence shows that Robertson's belief he should have been kept in the infirmary for monitoring rather than returned to his housing unit amounts to a mere disagreement with Nurse Burrell, which is insufficient to show an Eighth Amendment violation. *See Ciarpaglini*, 352 F.3d at 331. Summary judgment is therefore warranted in favor of Nurse Burrell.

*Nurse Turner*

Robertson is proceeding against Nurse Turner "for the delay in seeking emergency medical care for post-procedure complications on December 2, [2022.]" ECF 11 at 6. Nurse Turner argues summary judgment is warranted in her favor because she first learned Robertson was experiencing post-procedure complications on December 3, 2022, and she provided constitutionally adequate medical care at that time. ECF 115 at 7. Specifically, she attests she did not receive any information that Robertson was experiencing loss of bladder control, dizziness, or difficulty breathing prior to December 3, though she concedes that Nurse Nelson informed her "on an unknown date" in December 2022 that Robertson was complaining of headaches. ECF 113-2 at 2.

9

In response, Robertson attests that Nurse Turner personally told him on December 6, 2022, that: (1) she'd been informed by Nurse Nelson on December 2 that Robertson needed emergency medical care; and (2) she hadn't provided him emergency medical care on December 2 because she'd been "too busy" at the time. ECF 118-2 at 15. A reasonable jury could credit this testimony and conclude Nurse Turner denied Robertson constitutionally adequate medical care on December 2, 2022.[6] Because Robertson provides evidence he was suffering from symptoms indicating he had a serious medical need on December 2, and that Nurse Turner was aware of those symptoms but denied him medical care at that time because she was "too busy," a reasonable jury could conclude she violated Robertson's Eighth Amendment rights. *See Arnett*, 658 F.3d at 753; *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (evidence of "an inexplicable delay in treatment which serves no penological interest" can prove deliberate indifference); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for broken nose for nearly two days). Therefore, summary judgment must be denied on this claim.

For these reasons, the court:

(1) **GRANTS** Robertson's motion for leave to file a sur-reply (ECF 120);

---

[6] The defendants object that Nurse Nelson's December 2 statements to Robertson about his need for emergency medical care are hearsay. But the defendants don't argue that Nurse Turner's December 6 statements to Robertson about her own conduct on December 2 are hearsay. Because Nurse Turner is a defendant in this case, there's no basis to exclude her December 6 statements as hearsay.

(2) **ORDERS** the defendants to supplement their discovery to provide Robertson a copy of the instructions recorded by Nurse Burrell in the "Treatment Book" at the ISP's nursing station on December 1, 2022 (*see* ECF 114 at 2) by **February 14, 2025**;

(3) **ORDERS** the defendants to supplement their discovery to provide Robertson a copy of the "nurses call list" for December 2, 2022, (*see* ECF 114 at 2), or provide the name of the custodian of that record and explain why such record is not within their custody or control by **February 14, 2025**;

(4) **GRANTS** the defendants' motion for summary judgment (ECF 112) with regard to Robertson's claim against Nurse Burrell but DENIES the motion with regard to Robertson's claim against Nurse Turner;

(5) **DISMISSES** Nurse Burrell from this action; and

(6) **REMINDS** the parties this case is now proceeding only on Robertson's remaining claim against Nurse Tiffany Turner in her individual capacity for compensatory and punitive damages for the delay in seeking emergency medical care for post-procedure complications on December 2, 2022, in violation of the Eighth Amendment.

SO ORDERED on January 27, 2025.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT